WM. J. BECKER AND JAMES J. O'BRIEN, APPELLANTS, v. KNIGHTS OF COLUMBUS BUILDING COMPANY, A CORPORATION, RESPONDENT.

St. Louis Court of Appeals. Opinion filed June 2, 1931.

*Hall & Dame* for appellants.

*Leahy, Saunders & Walther* for respondent.

NIPPER, J.—This is an action to recover damages on account of the alleged breach of covenants in a warranty deed, by which the plaintiffs, who were grantees, are alleged to have suffered a loss. There was a verdict and judgment for defendant. and plaintiffs have appealed.

James J. O'Brien, one of the plaintiffs, purchased the property from the defendant, and had the other plaintiff, Wm. J. Becker,

named as grantee. Becker was merely a strawman in the transaction. The property was purchased for $70,000, and at the time of the purchase one Cassilly was occupying the premises as lessee of defendant. After plaintiffs purchased the property they had to pay Cassilly something like $4,000 in order to get possession, and it is on account of this fact that the suit is brought.

The property was purchased on May 29, 1925, and consisted of a rectangular parcel of land situated at the northeast corner of Lindell Boulevard and Sarah Street, in the City of St. Louis, having a frontage on Lindell of 150 feet, and a frontage on Sarah of 308 feet.

Plaintiffs, in their petition, complain that in the breach of the covenants of the deed, the real estate so purchased was encumbered by a valid outstanding unexpired lease under which the property was in the possession of Cassilly, who, as defendant's lessee, was conducting a gasoline filling station thereon. This lease was given for a term of two years, starting from May 29, 1924, and half of its term had expired at the time the deed conveying to plaintiffs was executed. The lease provided that Cassilly was to pay the defendant a monthly rental of $150, and that the defendant could terminate the lease by giving Cassilly sixty days' notice in the event the defendant desired to sell the property, or to improve the same for the defendant's own uses. And in the event such option to terminate was exercised, the defendant was to pay Cassilly a *pro rata* cost of the improvements, which the lessee, pursuant to the lease, had put on the premises, so that, by the exercise of such option at the expiration of one-half of the term of the lease, the defendant was to pay Cassilly one-half of the expense of such improvements, and at the expiration of the term, or earlier termination of the lease, Cassilly had the right to remove the improvements which he had erected upon the premises.

Plaintiffs complain, in their petition, that they were excluded from possession of the purchased premises and deprived of the improvements by the lessee holding under the said lease; that although the lease was not recorded, plaintiffs had knowledge of Cassilly's possession, and hence could not oust him by possessory action without satisfying his rights under the lease.

The petition also alleged that the defendant failed and refused, both before and after the passing of the lease, to take any steps toward the removal of Cassilly from the premises, or to preserve the improvements for the plaintiffs, and that plaintiffs were compelled to buy off Cassilly and redeem the improvements from the provisions of the lease in order to get possession.

The answer admitted that the defendant sold plaintiffs the property, and made, executed, and delivered the deed mentioned, but al-

leged that plaintiffs knew about the lease and its terms, and agreed to accept, and did accept, the conveyance of the premises subject to the tenancy of Cassilly. The answer also pleaded estoppel.

The deed from defendant to plaintiffs is in the usual form, containing the words, ''grant, bargain and sell,'' and excepting from the covenants only taxes for 1925 and thereafter. There is no question but that at the time of the passing of the deed, May 29, 1925, the premises conveyed and improvements were in the possession of Cassilly under a lease from defendant for a term of two years beginning May 29, 1924. The defendant took no steps to dispossess Cassilly, and he refused to vacate, and insisted on his rights under the lease. Plaintiffs, in order to get possession, immediately notified defendant and Cassilly, and demanded possession, and then filed suits against Cassilly in unlawful detainer and to restrain him from removing the improvements, and later paid him the amount heretofore mentioned, and he surrendered possession. The lease was not recorded, but plaintiffs knew that the property was occupied by lessee.

Plaintiff Becker stated that he had no beneficial interest, but acted and took title as trustee for James J. O'Brien, the other plaintiff; that he represented James J. O'Brien as attorney in the proceedings after the passing of the deed in attempting to remove the lessee, Cassilly, from the land; that he notified the officers of the defendant company of Cassilly's refusal to give possession, and notified Cassilly to vacate; that he knew of the occupancy of the premises by Cassilly before the passing of the deed, but knew nothing about the terms of the lease; that he talked to Mr. Kane, vice-president of the defendant company, who signed the deed for the defendant, and Mr. Kane told him that Mr. John S. Leahy was taking care of that, and immediate possession would be given.

James J. O'Brien testified that he authorized a real estate dealer to make an offer to purchase the property, and afterwards requested his father, William H. O'Brien, to call on Mr. John S. Leahy, president of the defendant company, in an effort to make the purchase at a satisfactory price; that he made one visit with his father to Mr. Leahy's office, and talked with the latter about the purchase. This was a few days before the earnest money contract was given. The price of $70,000 was finally agreed upon. That Mr. Leahy stated he would take care of Cassilly; that he knew nothing of the terms or conditions of Mr. Cassilly's holding possession, and that he had no discussion with Mr. Leahy, or any one else representing the Knights of Columbus Building Company, prior to the closing of the deal about Cassilly's being allowed to remain on the premises; that he had agreed to convey the most valuable part, the corner, to the National Refining Company, and so notified the officers of defendant prior to the execution of the deed; that after the lessee failed to give

possession, he had an·interview with Mr. Cassilly's attorney, and that negotiations were resumed by his father, William H. O'Brien, acting for him, and Cassilly was finally bought off for the sum of $3,968.

Mr. William H. O'Brien, father of plaintiff James J. O'Brien, testified that he went to see Mr. Leahy, at his son's request, about April, 1925, with respect to the purchase of this property. He was acting for his son at the time. He saw Mr. Leahy a number of times. He said he did not see the lease under which Cassilly occupied the premises, but that Mr. Leahy·told him about·it, and stated they would take care of Cassilly, although Mr. Leahy testified that he had showed this lease to the elder O'Brien and discussed its provisions with him. It appears that while the negotiations were pending Mr. Leahy went away from the city of St. Louis, and the deal was consummated between the plaintiffs and other officers of the defendant company.

Mr. Joe Kane, as vice-president of the defendant company, testified that he executed the deed in the absence of Mr. Leahy.

Mr. Stretch testified, for the defendant, that he was manager of the defendant company, and that· he told the elder O'Brien prior to the sale that Cassilly had a lease; that he was present at the closing of the sale, and that Mr. O'Brien looked at the certificate of title at that time and saw the lease was not recorded, and made the remark that Cassilly "can go to hell, and we can put him out any time we want to." ·Mr. O'Brien, however, denied ever making any such statement.

Mr. Leahy testified that he was president of the defendant company, and that Mr. William H. O'Brien called to see him first about the purchase in February, 1925, and made about nine later calls; that at one of these conferences Mr. William H. O'Brien was shown the lease, and that they discussed Cassilly's tenancy. He did not undertake to give the exact language used, but said that the effect of his conversations with the elder O'Brien was that Cassilly could remain and need not be disturbed until their plans as to the use of the property had been developed. He said there was some discussion with respect to the zoning ordinance, which might prevent them from starting a filling station on the property, and he thought there might be an object in making the operation of the filing station continuous by arranging to continue immediately when Cassilly quit;•that there was no request for any notice to vacate to be given Cassilly; that Mr. O'Brien made one visit to his office in company with his son; and Mr. Leahy further testified that Cassilly was to remain there unmolested, subject to the 'written direction of Mr. O'Brien.

The court refused certain instructions requested by the plaintiffs. The only instruction given on behalf of plaintiffs was one on the measure of damages.

Plaintiffs, who are appellants here, insist that, as the deed contained no exceptions to the lease, defendant's failure to give plaintiffs possession constituted a breach of the covenants of the deed. Plaintiffs also insist that the effect of this deed cannot be varied by parol testimony, because all prior and contemporaneous oral agreements with respect to the transaction are merged in the deed itself, and parol testimony is inadmissible to vary or contradict the terms of the deed, or release defendant from liability. This is ordinarily true, as may be seen by reference to the following cases cited by plaintiffs: Laclede Laundry Co. v. Freudenstein, 179 Mo. App. 175, 161 S. W. 593; Anthony v. Rockefeller, 102 Mo. App. 326, 76 S. W. 491. The trouble with plaintiffs' situation is this: It appears from this record that both plaintiffs and defendant in the court below introduced testimony as to what the agreement with respect to Cassilly's tenancy was before, at the time, and after the execution of the deed, and both sides sought to show what the oral agreement was prior to and at the time of the execution of the deed. Plaintiffs sought to show that they made no agreement to take the property subject to Cassilly's tenancy, and defendant sought to show by a number of witnesses that such was the agreement, and there were no objections to any of this testimony upon the ground that it was inadmissible to vary the written terms of the deed. Plaintiffs cannot be permitted to complain, on appeal, with respect to the admission of this evidence when they tried the case upon this theory and made no objections to any of this testimony at the time it was introduced. [Briegel v. Terry (Mo. App.), 226 S. W. 624.]

Plaintiffs also requested an instruction submitting the questions to the jury as to whether or not plaintiffs agreed to take the property subject to Cassilly's lease, or agreed to accept Cassilly as a tenant. Although this instruction was refused, plaintiffs not only permitted the instroduction of oral testimony as to the terms and conditions of the transfer of the property, but requested an instruction along that line. Therefore, they are in no position to complain here. [Cady v. Coates, 101 Mo. App. 147, 74 S. W. 424.]

Defendant requested, and the court gave, instructions to the effect that if plaintiffs accepted the premises subject to the occupancy and tenancy of said Cassilly, then plaintiffs could not recover. This seems to be the theory upon which the case was tried by both parties. The case seems to have been fairly tried and submitted upon the theory by which plaintiffs sought to recover.

Finding no reversible error in the record, the judgment is affirmed. *Haid, P. J.,* and *Becker, J.,* concur.